[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12618
Non-Argument Calendar
_____

D.C. Docket Nos.  5:09-cv-00112-WTH-TBS,
5:09-cv-00200-WTH-TBS

CURTIS LEE WATSON,

Petitioner-Appellant,

versus

WARDEN, FCC COLEMAN - USP I,

Respondent-Appellee.

_____

No. 13-11938
Non-Argument Calendar
_____

D.C. Docket No. 5:09-cv-00200-WTH-TBS

CURTIS LEE WATSON,

Petitioner-Appellant,

versus

FCC COLEMAN - USP I WARDEN,

Respondent-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(June 10, 2013)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Curtis Lee Watson is a federal prisoner at Coleman USP serving criminal sentences imposed by the Superior Court for the District of Columbia ("D.C. Superior Court"). Watson appeals pro se the district court's denial of his consolidated petitions for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241. After review, we affirm.

## I.  BACKGROUND

### A.    1978 D.C. Superior Court Sentences

On August 10, 1978, the D.C. Superior Court sentenced Watson in two separate criminal cases. In the first criminal case, case number 91888-76, Watson received a sentence of five to fifteen years for an armed burglary conviction (Count A), another sentence of five to fifteen years for a second armed burglary conviction (Count D), to run consecutively to Count A, two sentences of five to fifteen years

2

for assault with a dangerous weapon (Counts F and I), to run concurrent to each other and to Count D, and a sentence of forty months to ten years for assault with intent to kill (Count C), to run concurrent to Count A.  Thus, the total prison term for the five convictions in case number 91888-76 was ten years to thirty years.

On the same date, in the second criminal case, case number 69971-77, Watson received a mandatory minimum sentence of twenty years to life for first degree murder (Count B), to run <u>consecutive</u> to any sentences imposed in case number 91888-76.  Watson also received a concurrent one-year sentence for carrying a pistol without a license (Count C).

Watson's aggregate prison term for the two 1978 D.C. Superior Court criminal cases was a minimum of thirty years to a maximum of life.  Watson's minimum of thirty years resulted from the two five-year minimum sentences, running consecutively, in case number 91888-76 and the twenty-year consecutive minimum sentence in case number 69971-77.

**B.     1996 Eastern District of Virginia Sentence for Escape**

In 1988, Watson escaped from custody at Lorton Reformatory and remained a fugitive until his capture in 1995.  In 1996, the district court in the Eastern District of Virginia sentenced Watson for his escape to 12 months' imprisonment, to run consecutive to any other present or previous sentences.  In 1998, D.C.'s

Lorton Reformatory was closed, and Watson was transferred to the custody of the Bureau of Prisons ("BOP").[1]

## C.    Watson's Consolidated § 2241 Petitions

Watson filed one § 2241 petition in the Middle District of Florida challenging the BOP's calculation of his sentences.  Watson filed another § 2241 petition, raising the same sentence calculation claim, in the district court for the District of Columbia, which was then transferred to the Middle District of Florida. The two petitions were later consolidated.

In his consolidated § 2241 petitions, Watson claimed that the BOP miscalculated his parole eligibility date, placing it at the end of thirty years, rather than at the end of his mandatory minimum twenty-year sentence for first degree murder.  Although Watson agreed that his aggregate minimum sentence was thirty years (twenty years for murder plus two consecutive five-year sentences for assault),[2] he claimed that "[s]omeone at the Department of Corrections placed this

---

[1]Under the National Capital Revitalization and Self-Government Improvement Act of 1997, the custody of inmates incarcerated under the D.C. Code was transferred to the BOP.  Pub. L. No. 105-33, § 11201(a), 111 Stat. 251, 734 (1997); see also D.C. Code § 24-101.

[2]Watson's judgment and commitment order indicates that the two consecutive five-year sentences were actually for the two armed burglary counts (Counts A & D), not the two assault counts (Counts F & I).  In any event, Watson's § 2241 petitions admitted that the D.C. Superior Court sentenced him to two consecutive sentences of five to fifteen years in case number 91888-76.

sentence [ ] at 'thirty years to life.'"  Watson asserted that, with good time credit, he has already completed his D.C. sentences and should be released.[3]

## D.     Government's Response

In response to a show cause order, the government argued that the BOP correctly calculated Watson's parole eligibility date.  The government submitted a declaration from Dennis Melick, a BOP Management Analyst assigned to the Designation and Sentence Computation Center.  Melick had reviewed Watson's records and sentence computation and explained how Watson's parole eligibility date was calculated.

Specifically, Melick averred that Watson's 1978 D.C. Superior Court sentences were aggregated to a minimum of thirty years and a maximum of life, based on his mandatory minimum twenty-year sentence for first degree murder and his two consecutive five-year sentences for armed burglary.  Because no D.C. Code provision governs the commencement of a sentence, the BOP uses two U.S. Code provisions: 18 U.S.C. § 3568 (repealed effective Nov. 1, 1987), for sentences imposed prior to November 1, 1987 (referred to as "old law" sentences); and 18 U.S.C. § 3585(a), for sentences imposed after that date (referred to as "new law"

---

[3]The district court initially dismissed Watson's § 2241 petitions prior to service on the government for lack of jurisdiction pursuant to D.C. Code § 23-110(g).  In a prior appeal, this Court concluded that § 23-110(g) did not bar the district court from entertaining Watson's sentence calculation claim and remanded for further proceedings.  See Watson v. United States, 392 F. App'x 737 (11th Cir. 2010).

sentences).  Watson's 1978 D.C. Superior Court sentences were "old law" sentences, and his 1996 Eastern District of Virginia 12-month sentence for escape was a "new law" sentence.

BOP's Melick cited and attached copies of relevant provisions of the BOP's District of Columbia Sentence Computation Manual, Program Statement 5880.33, which establishes procedures for computing sentences for inmates, like Watson, who are sentenced under the D.C. Code.  Per Program Statement 5880.33, "old law" sentences and "new law" sentences cannot be aggregated, and must be computed separately with the consecutive term commencing upon the date of completion of the first term of imprisonment.  Because Watson's "old law" sentences have not yet been completed, his "new law" sentence cannot be established yet.  Melick explained that until Watson was paroled on his "old law" sentences or his maximum life term was converted to a definite term, his "new law" 12-month sentence was held as a detainer.

As to his "old law" sentences (the aggregate of which was thirty years to life), Watson was eligible for parole after he had served the required minimum thirty-year term.  Watson's "old law" sentences commenced on August 10, 1978, the day he was sentenced.  According to Melick, Watson received 31 days of prior custody credit, 1,200 days of District of Columbia Institutional Good Time (DCIGT) credit and 30 days of District of Columbia Educational Good Time

6

(DCEGT) credit.  Based on these credits and the fact that Watson's "old law" sentences did not run for 2,618 days due to his escape, Watson's projected parole eligibility date for his "old law" sentences was April 27, 2012.  Melick stated that the BOP's computation of Watson's federal sentence was in accordance with BOP policy, the federal sentencing statutes, and the sentencing court's intent.

Watson did not file a reply.

## E.    District Court's Order

The district court found that an evidentiary hearing was unwarranted because the operative facts were not in dispute and denied Watson's § 2241 petitions.  The district court found, inter alia, that: (1) Watson's 1978 D.C. Superior Court "old law" sentences  began on August 10, 1978, but stopped running while he was out of custody following his 1988 escape, and did not restart until his re-arrest in 1995; (2) the BOP awarded Watson 31 days of prior custody credit, 1,200 days of DCIGT credit, and 30 days of DCEGT credit; (3) Watson's parole eligibility date for his "old law" sentences was April 27, 2012; (4) if and when Watson gains parole as to his "old law" sentences, he will begin serving his "new law" sentence; and (5) Watson did not demonstrate that the BOP erred in calculating his aggregate sentences or his parole eligibility date in accordance with the terms of judgment and pursuant to applicable BOP regulations.  Watson filed this appeal.

## II.  DISCUSSION

An inmate may challenge the BOP's execution of his sentence in a § 2241 petition.  See, e.g., Byrd v. Hasty, 142 F.3d 1395, 1397 (11th Cir. 1998) (involving § 2241 petition challenging BOP's refusal to reduce inmate's sentence for successful completion of a treatment program); see also Antonelli v. Warden, 542 F.3d 1348, 1352 (11th Cir. 2008) (concluding a § 2241 petition is the proper vehicle to challenge the execution of a sentence, rather than the validity of the sentence itself).[4]

On appeal, Watson contends that his "old law sentences," that is, the 1978 D.C. Superior Court sentences, were "converted to a federal term of life."  A copy of the D.C. Superior Court's judgment and commitment order, attached to the government's response to Watson's § 2241 petitions, clearly shows that, for the first degree murder conviction, Watson was sentenced to twenty years to life, an indefinite term.  The order also shows that the sentence was to run consecutive to his sentences in case number 91888-76, that is, his two consecutive five-year minimum sentences for his armed burglary convictions.  In other words, Watson's aggregate minimum sentence for his 1978 D.C. Superior Court convictions is thirty years—five years plus five years plus twenty years.  Watson's § 2241 petition

---

[4]In reviewing a district court's denial of a § 2241 petition, we review the district court's findings of fact for clear error and questions of law de novo.  Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006).

concedes this minimum aggregate sentence of thirty years. Watson's aggregate maximum term remains life.

According to Melick's affidavit and the attachments thereto, when Watson was transferred to BOP custody, Watson's "old law" sentences were computed commencing August 10, 1978, with a minimum term of thirty years and a maximum term of life. After Watson completes his minimum thirty year term, he will be eligible for parole. Nothing in the record supports Watson's claim that his indefinite aggregate term of thirty years to life has been converted by the BOP to a definite term of life.

While Watson claims that he was only required to serve 19 years and 8 months of his "old law" sentences, he does not explain how he arrives at this computation. As discussed above, at a minimum, Watson is required to serve thirty years. Moreover, Watson does not point to any error in the BOP's method of calculating his good time credits and his parole eligibility date of August 27, 2012 for his "old law" sentences.

Finally, Watson contends that Congress mandated that all D.C. inmates be released upon completion of their sentences. Even if this is true, Watson has not completed his D.C. Superior Court sentences. Furthermore, he has yet to serve his consecutive twelve-month sentence for the 1996 escape conviction, which can commence only after either (1) Watson receives parole on his "old law" sentences

9

or (2) Watson's "old law" sentences are converted to a definite term, neither of which has yet happened.  Thus, there is no merit to Watson's claim that he is entitled to immediate release.

**AFFIRMED.**